PREMISES ADDRESS: _____ DATE: _____

| | |
|---|---|
| SECURITY DEPOSIT: | ✗ $ _____ |
| RENT COLLECTED: | ✗ $ _____ |
| FOR THE PERIOD: | ✗ _____ TO _____ |
| OTHER: | ✗ $ _____ |
| TOTAL CHARGES: | ✗ $ _____ |

# RESIDENTIAL TENANCY AGREEMENT

1. **PREMISES:** BARRY & JEANNY YUEN, ("OWNER") rents to Atech Flash, INC ("TENANT"), and Tenant hires 181 VIA ARAGON, FREMONT, California, (the "PREMISES") CA 94539

2. **TERM:** The term of this rental shall begin on August-10-2005 and end on _____ Month to Month Lease

3. **PHYSICAL POSSESSION:** If Owner is unable to deliver possession of the Premises at the commencement of the term, Owner shall not be liable for any damage caused thereby, nor shall this Agreement be void or voidable, but Tenant shall not be liable for any rent until possession is delivered.

4. **RENT:** The initial monthly base rent for the Premises shall be $ 1650.00 ✗. All rent is due and payable in advance on the 7th day of each and every month (the "Due Date") without offsets, deductions or credits. All rent shall be paid to BARRY YUEN or such other person as Owner shall designate in writing. Tenant agrees always to pay rent by personal check, cashier's check, or money order and not use cash. Rent shall be paid to Owner at the following address: 355 LEMARC ST., FREMONT, CA 94539 or at such other place designated by Owner. Any other sums, which may become due from Tenant from time to time, shall be considered rent and will be due on the Due Date. Tenant bears the risk of loss or delay of any payment made by mail. Owner must receive mailed rent payments on or before the Due Date. Rent for any partial month shall be pro-rated at the rate of 1/30th of the monthly rent per day. Owner may apply any payment made by Tenant to any obligation of Tenant to Owner notwithstanding any dates or other direction from Tenant that accompanies any such payment. Any attempt by Tenant to allocate a payment in any other way shall be null and void.

5. **SECURITY DEPOSIT:** Before the commencement of the term, Tenant shall pay a security deposit of ✗ $ 1650.00 ✗ (the "Security Deposit") for the purposes set forth in Civil Code Section 1954. No trust relationship between Owner and Tenant is created on account of the making of said Security Deposit and Owner may commingle said Security Deposit with other funds of Owner. Owner may retain such amounts of the Security Deposit as are reasonably necessary to remedy Tenant defaults under this Agreement and damages as allowed by law. Owner shall, within the time period allotted by law, refund any balance after such deductions to Tenant after Tenant has vacated the Premises. Tenant shall not be deemed to have vacated the Premises for purposes of this paragraph until a) Tenant returns to Owner ALL keys to the Premises, and b) Tenant has surrendered the Premises to Owner free and empty of all persons claiming any right to possess the Premises. Any balance of the Security Deposit and an accounting of any deductions therefrom will be mailed to Tenant at the Premises unless Tenant provides, in writing to Owner, a mailing address to which the balance, if any, of the Security Deposit and the accounting should be sent. Owner's check or other draft refunding any balance of the Security Deposit may be made in the name of all original tenants regardless of the party who in fact made the deposit and regardless of the identity of the persons then occupying the Premises. Tenant may NOT apply the Security Deposit, nor any portion thereof, to the last month's rent. If any portion of the Security Deposit is applied by Owner to any obligations of Tenant at any time during the tenancy Tenant must, upon 5 days written notice, reinstate the Security Deposit to its full original amount.

So long as any law so requires, commencing with the date Owner received the Security Deposit, Owner shall pay to Tenant simple interest as directed by such law on the amount held as a Security Deposit provided this tenancy does not terminate before the Security Deposit has been held for one year. Said payment of interest shall be made once a year commencing with the date the Security Deposit has been held for a year. Upon Tenant's surrender of the Premises, if the Security Deposit is insufficient to remedy Tenant's default in rent, to repair damages caused by Tenant and to clean the Premises, Owner may use from the accrued unpaid interest such amounts as are necessary for those purposes. Accrued unpaid interest or balance thereof, if any, shall be mailed to Tenant at last known address in the same manner as any refund of the Security Deposit.

6. **LATE PAYMENTS:** Tenant and Owner agree that Owner will sustain damage on account of any late payment of rent but that it will be extremely difficult to fix or determine with specificity the actual amount of the damage. Therefore, Tenant agrees to pay, as additional rent, a late charge equal to 5% of the unpaid rent for any payment of rent not received by Owner within five calendar days of the Due Date. The parties agree that this late charge represents a fair and reasonable estimate of the costs and damages that Owner will incur by reason of late payment by Tenant. The provision for payment of a late charge does not constitute a grace period and Owner may serve a 3-Day Notice to Pay Rent or Quit on the day after the Due Date. Owner and Tenant agree that Tenant paying rent five days after the Due Date on three separate occasions within any twelve month period shall constitute habitual late payment of rent and may be considered a just cause for eviction.

Tenant(s) Initials: HL _____ _____

7. **RETURNED CHECKS:** In the event that Tenant makes any payment required hereunder with a check which is not honored by the bank on which it is drawn for any other reason, Tenant agrees to pay to Owner the additional sum of $ _____ as a reimbursement of the expenses incurred by Owner. Such charge shall be immediately due and payable upon notice to Tenant. Failure to immediately pay the charge shall constitute a default under the terms of this Agreement. Owner reserves the right to demand payment of rent by certified funds, cashier's check or money order for all future payments in the event of any such returned check or any other monetary default by Tenant and rent tendered in any other form may be refused by Owner. Nothing in this paragraph shall limit other remedies available to Owner as a payee of a dishonored check.

Owner and Tenant agree that three returned checks in any nine month period shall constitute frequent return of checks due to insufficient funds and may be considered a just cause for eviction.

Tenant(s) Initials: HL _____ _____

8. **FAILURE TO PAY:** Pursuant to Civil Code Section 1785.26, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations, such as your financial obligations under the terms of this Agreement.

Copyright © PPMA • March 1998
This document may not be reproduced without the express, written permission of the Professional Property Management Association of San Francisco.

RESIDENTIAL TENANCY AGREEMENT
(PPMANTA-01)

ORIGINAL COPY: Owner   COPY #1: Tenant   COPY #2: File   PAGE 1 OF 5

PREMISES ADDRESS:_____    DATE:_____

26. **TERMINATION:** After the expiration of the original term of this Agreement either Owner or Tenant may terminate the tenancy created by this Agreement by giving at least 30 days prior, written notice to the other party. Upon termination Tenant shall completely vacate the Premises and any parking or storage areas; deliver all keys, furnishings, if any, and Premises to Owner in the same condition as received excepting normal wear and tear; and give written notice of Tenant's forwarding address.
   Any attempt by Tenant to terminate this rental agreement prior to the end of the original term shall be deemed to be a breach of this agreement and Owner shall be entitled to recover all damages occasioned thereby including leasing commissions, advertising expenses and utilities maintained to show the unit.

27. **HOLDING OVER:** Tenant agrees to vacate the Premises by 7:00 PM on the termination date of this tenancy. Should Tenant fail to vacate by said time the hold-over shall be presumed to be willful and deliberate and Owner shall be entitled to damages for the hold-over period, plus such other expenses incurred due to breach of this condition of the Agreement.

28. **HOLD HARMLESS:** Owner shall not be liable for any damages or injury to Tenant, or any other person, or to any property, occurring on the Premises or any part thereof, or in common areas thereof, unless such damage is the proximate result of the negligence or unlawful act of Owner, his Agents or his employees. Tenant agrees to hold Owner harmless from any claims for damages, no matter how caused, except for injury or other damages for which Owner is legally responsible.

29. **INSURANCE:** Owner's insurance does **NOT** provide for coverage of Tenant's personal belongings or personal liability unless as a direct and proximate result of Owner's negligence. Therefore, Owner strongly urges and recommends to each Tenant that Tenant secure sufficient insurance to protect against losses such as fire, flood, theft, vandalism, personal injury or other casualty. Owner will NOT accept liability or responsibility for any losses not caused by its own proximate negligence.

Tenant(s) Initials: _HL_____

30. **LEAD DISCLOSURE:** Many homes and apartments built before 1978 have paint that contains lead (called lead-based paint). Lead from paint chips and dust can pose serious health hazards if not taken care of properly. The law requires that tenants and lessees receive certain information before renting pre-1978 housing. By signing this Agreement, Tenant represents and agrees that Owner has provided Tenant with such information, including, but not limited to, the EPA booklet entitled "Protect Your Family From Lead In Your Home" and the "San Francisco Lead Hazard Notice for pre-1978 Dwellings." Any known lead-based paint or lead hazards at the Premises, if any, are hereby disclosed as follows: _____
_____
_____

31. **INTERRUPTION OF SERVICES:** Owner shall not be liable to Tenant or to any other person in damages or otherwise, nor shall Owner be in default under this Agreement for any interruption or reduction of utilities or services caused by someone other than Owner.

32. **GENERAL:** The invalidity or partial invalidity of any provision of this Agreement shall not render the remainder of the Agreement invalid or unenforceable. Violation by Tenant of any applicable ordinance or statute shall be deemed sufficient cause for termination of tenancy. No oral agreements have been entered into. This Agreement shall not be modified unless reduced to writing. Time is of the essence of this Agreement.

33. **NO WAIVER:** No failure of Owner to enforce any term of this Agreement will be deemed a waiver of that term or of any other term of the Agreement. The waiver by Owner of any term of this Agreement will not be deemed to be a waiver of any subsequent breach of the same or any other term of this Agreement, nor will any custom or practice which may develop between the parties be construed to waive or to lessen the right of Owner to insist upon performance by Tenant of all the provisions of this Agreement. The subsequent acceptance of rent by Owner will not be deemed to be a waiver of any preceding breach by Tenant of any term of this Agreement regardless of Owner's knowledge of such preceding breach at the time of acceptance of such rent. Owner's acceptance of a partial payment of rent will not constitute a waiver of Owner's right to the full amount due nor will Owner's acceptance of rent paid late ever constitute a waiver of Owner's right to evict Tenant for habitual late payment of rent.

34. **ESTOPPEL CERTIFICATES:** Tenant and each of them, within ten (10) days after notice from Owner, shall execute and deliver to Owner a certificate or statement signed by Tenant and each of them stating such information that may reasonably be requested by Owner, including, but not limited to, the amount of base rent currently paid, Tenant's move-in date, the date of any last rent increase, the identity of furniture or fixtures that belong to Tenant, whether the rent includes any parking space or storage space, and the amount of any security deposit or prepaid rent and whether interest on said deposit has been paid and when. In addition, Tenant(s) shall disclose, upon request, any information which Tenant believes would prevent any purchase of the Premises or would prevent Owner or potential owner from moving into the Premises. Failure to deliver the certificate within the ten (10) days shall be a material breach of this Agreement.

35. **APPLICATION:** Any Rental Application or related form submitted by Tenant is incorporated herein as though set forth in full. Any misrepresentations contained therein shall be considered a material breach of this Agreement and may subject Tenant to eviction.

36. **HOUSE RULES:** Tenant agrees to abide by any and all house rules, whether made known before or after the date of this Agreement, including, but not limited to, rules with respect to noise, odors, disposal of refuse and use of common areas. Tenant has read, understands and agrees to be bound by the existing House Rules attached to and made part of this Agreement.

37. **ENTIRE AGREEMENT:** The foregoing constitutes the entire Agreement between the parties and may be modified only in writing signed by all parties except that Owner may change the terms of the tenancy and this Agreement pursuant to Civil Code Section 827.

BY SIGNING BELOW TENANT(S) HEREBY ACKNOWLEDGE(S) READING AND UNDERSTANDING THE TERMS
OF THIS AGREEMENT, AND FURTHER ACKNOWLEDGE(S) RECEIVING A COPY HEREOF:

TENANT _Atech Flash INC_____  DATE: _July-18-05_  OWNER: _[signature]_____
                                                   By:
TENANT _[signature]_____  DATE: _July-18-05_       _7/16/05_

TENANT _____  DATE: _____    BARRY K YUEN

Copyright © PPMA • March 1998
This document may not be reproduced without the express, written permission of the Professional Property Management Association of San Francisco.

RESIDENTIAL TENANCY AGREEMENT
(PPMARTA-01)